IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

ST. LOUIS EFFORT FOR AIDS,    )
et al.,    )
    )
    Plaintiffs,    )
    )
vs.    )    Case No. 13-4246-CV-C-ODS
    )
JOHN HUFF, Director of the    )
Missouri Department of Insurance,    )
Financial Institutions and    )
Professional Registration,    )
    )
    Defendant.    )

## ORDER AND OPINION (1) GRANTING IN PART PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION, (2) DENYING DEFENDANT'S MOTION TO DISMISS, AND (3) DENYING PARTIES' REQUESTS FOR ORAL ARGUMENT,

Pending is Plaintiffs' Motion for Preliminary Injunction, which seeks to enjoin Defendant (the Director of the Missouri Department of Insurance, Financial Institutions and Professional Registration) from enforcing various provisions of Missouri's Health Insurance Marketplace Innovation Act ("HIMIA"). The Court concludes an injunction is justified to enjoin enforcement of HIMIA insofar as it applies to entities and individuals certified under federal law to provide services or perform functions pursuant to the Affordable Care Act and its attendant regulations. Such entities and individuals specifically include Counselor Designated Organizations, Navigators, and Certified Application Counselors (collectively "Federal Counselors"). The Court reaches this conclusion without holding a hearing or entertaining oral argument because (1) the issues to be resolved are legal and not factual, (2) neither side has suggested there are relevant factual issues to be resolved, and (3) the parties' filings have sufficiently addressed the legal issues.

## I.  BACKGROUND

"In 2010, Congress enacted the Patient Protection and Affordable Care Act, 124 Stat. 199 [(the 'ACA')].  The Act aims to increase the number of Americans covered by health insurance and decrease the cost of health care."  National Federation of Independent Business v. Sebelius, 132 S. Ct. 2566, 2580 (2012); see also 42 U.S.C. § 18091.  Individuals who cannot obtain qualified health plans ("QHPs") from their employer, including "part-time employees, self-employed individuals, and unemployed individuals are steered to the insurance exchanges established under the ACA, where the government offers subsidies to those who cannot shoulder the full cost of insurance on their own."  Korte v. Sebelius, 735 F.3d 654, 728 (7th Cir. 2013).  As part of providing QHPs, the exchanges provide the opportunity for individuals and employers to compare various health plans.

The ACA provides a mechanism for states to establish these exchanges, e.g., 42 U.S.C. § 18031(b), but in those states that chose not to do so the Secretary of Health and Human Services ("HHS") is responsible for establishing and operating the exchange.  E.g., 42 U.S.C. § 18041(c)(1); 78 Fed. Reg. 42824.  The federal exchange is often referred to as a "Federally Facilitated Exchange" or "FFE."  HHS must contract with appropriate not-for-profit entities in the state to operate the FFE.  42 U.S.C. § 18041(c)(1).

All exchanges – whether they are FFEs or created by the state – share certain requirements.  Obviously, in the case of an FFE it is the federal government – through HHS – that is responsible for meeting those requirements.  Included in the requirements is the creation of a Certified Application Assistance Program consisting of some combination of (1) Certified Application Counselors ("CACs") and (2) Navigators.  The duties of CACs and Navigators are spelled out in the ACA, and are further refined in HHS regulations.  Those regulations also regulate the conduct of CACs and Navigators.  For instance, exchanges are required to create a "certified application counselor program" by either designating organizations to certify counselors or directly certifying members or individuals of other organizations.  45 C.F.R. §§ 155.225(a), 155.225(b)(2).  Standards for certification and the counselors' obligations are further specified in the

2

regulation. Id. § 155.225(d). The Exchange is responsible for overseeing counselors and must create a procedure for withdrawing certification if it finds a counselor has violated the regulations. Id. § 155.225(e). Similarly, an exchange "must establish a [Federal] Navigator program . . . through which it awards grants to eligible public or private entities or individuals" as described in applicable regulations. 45 C.F.R. § 155.210(a). In the course of doing so, the exchange must establish standards and a course of training for Navigators. Id. § 155.210(b); see also 42 U.S.C. § 18031(i)(4). Thus, those entities and individuals previously defined in this Order as Federal Counselors – Counselor Designated Organizations, Navigators, and Certified Application Counselors – are all certified, approved, and subject to oversight by HHS either directly or indirectly.

Plaintiffs St. Louis Effort for Aids and Planned Parenthood of the St. Louis Region and Southwest Missouri (the "CAC Plaintiffs") are Counselor Designated Organizations, CACs, and Navigators under the ACA; they also employ individuals who are certified as CACs and Navigators. It also appears the CAC Plaintiffs are tasked with training Navigators. E.g., Complaint, ¶¶ 7-8; Plaintiffs' Exhibit 1 at ¶¶ 4, 6; Plaintiffs' Exhibit 2 at ¶¶ 4, 6. Plaintiffs' Suggestions at 2, 14. The remaining Plaintiffs are: Consumers Council of Missouri, Missouri Jobs with Justice, Jeanette Oxford, Dr. Wayne Letizia, Dr. William Fogarty, and Chris Worth. These individuals and entities are not described as CACs, Navigators, or any other Federal Counselor certified under the ACA.

The State of Missouri opted not to create an exchange, so HHS created and operates the FFE in Missouri. Missouri subsequently passed the Health Insurance Marketplace Innovation Act of 2013 ("HIMIA"), which regulates the conduct of those performing duties on behalf of the FFE. All Plaintiffs seek to enjoin certain provisions of HIMIA, arguing the provisions (1) are preempted and violate the Supremacy Clause, (2) violate the First Amendment, and (3) violate the Due Process Clause. Defendant filed a motion to dismiss, contending that his arguments against the preliminary injunction demonstrate Plaintiffs have failed to state a cause of action for which relief can be granted. The Court will focus on the preemption/Supremacy Clause issues because they are dispositive of the issues raised in the motions.

3

## II. DISCUSSION

### A. Standards

#### 1. Preliminary Injunctions

"A preliminary injunction is an extraordinary remedy and the burden of establishing the propriety of an injunction is on the movant." Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003) (internal citation omitted). In deciding whether to grant or deny a motion for preliminary injunction, the Court must consider four factors: (1) the movant's likelihood of success on the merits; (2) the irreparable harm the movant will suffer if preliminary relief is not granted; (3) the balance of hardships to the parties; and (4) the impact of the injunction on the public interest. Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008); Dataphase Sys., Inc. v. CL Sys. Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc). The first factor is the most important, Shrink Missouri Government PAC v. Adams, 151 F.3d 763, 764 (8th Cir. 1998), and it is the one that has garnered virtually all of the parties' attention.

#### 2. Preemption

Federal law is capable of preempting state law because of the Supremacy Clause's command that federal law is the supreme law of the land. Congress can expressly preempt state law by including appropriate language in a statute; preemption also occurs by implication. However, these categories are not "rigidly distinct." Crosby v. National Foreign Trade Council, 530 U.S. 363, 372 n.6 (2000). In this case, both categories are arguably implicated. With that said, the Court notes the ACA provides little force of its own as all it says on the subject is that it does not "preempt any State law that does not prevent the application of the provisions of" the ACA, 42 U.S.C. § 18041(d) – which implies that it *does* preempt any State law that prevents the ACA's operation, and in that sense the statute does little more than invoke conflict preemption.

4

"Conflict preemption occurs when compliance with both federal and state laws is impossible, and when a state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" Keller v. City of Fremont, 719 F.3d 931, 940 (8th Cir. 2013) (quoting Arizona v. United States, 132 S. Ct. 2492, 2501 (2012)); see also Lefaivre v. KV Pharm. Co., 636 F.3d 935, 939 (8th Cir. 2011). "To determine whether a state law conflicts with Congress' purposes and objectives, we must first ascertain the nature of the federal interest." Hillman v. Maretta, 133 S. Ct. 1943, 1950 (2013). "What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects." Crosby, 530 U.S. at 373.

> "[T]he entire scheme of the statute must of course be considered and that which needs must be implied is of no less force than that which is expressed. If the purpose of the act cannot otherwise be accomplished – if its operation within its chosen field must be frustrated and its provisions be refused their natural effect – the state law must yield to the regulation of Congress within the sphere of its delegated power."

Id. (quoting Savage v. Jones, 225 U.S. 502, 533 (1912)).

The ACA's purpose has been referenced earlier – it is a Congressional measure designed to increase the availability and lower the cost of health care. The specific aspects of the ACA at issue in this case relate to the Government's operations of the FFE, which are a means to the ACA's overall objective. Thus, state laws that make operation of the FFE more difficult or onerous run afoul of the ACA's purpose and are subject to preemption.

### B. Application of the Requirements for Preliminary Injunctions

#### 1. Likelihood of Success on the Merits

Plaintiffs' claims arise from the following thesis: HIMIA (1) frustrates the ACA's purpose by imposing additional burdens upon them as duly designated Federal Counselors and (2) creates a risk that they will be punished because HIMIA forbids

5

them from performing their duties required under the ACA. The Court concludes the CAC Plaintiffs (St. Louis Effort for Aids and Planned Parenthood) are likely to succeed on this claim, but not the other Plaintiffs.

### (a) HIMIA's Application to Plaintiffs

HIMIA applies to certain individuals and entities; the term used for those individuals and entities is "Navigator," but the reader is cautioned that the term has a different meaning under HIMIA than it does under the ACA. In an attempt to minimize confusion, the Court shall employ the terms "State Navigator" and "Federal Navigator" to differentiate them.

Defendant argues there can be no preemption because HIMIA does not apply to Plaintiffs. Notwithstanding the fact that Defendant is charged with enforcing the statute, the Court concludes this contention is plainly wrong – at least, with respect to the two CAC Plaintiffs (St. Louis Effort for Aids and Planned Parenthood).

The first sentence in Section 376.2000(4) of the Revised Missouri Statutes contains several definitions of who is a State Navigator. The first definition contains a broad description, and the remainder of the sentence adds to the initial definition by specifying individuals and entities that are also to be included. The first definition describes a State Navigator as one who "for compensation, provides information or services in connection with eligibility, enrollment, or program specifications of any health benefit exchange operating in this state." Defendant argues HIMIA does not apply to the CAC Plaintiffs – so there is no potential for conflict with the ACA – because Plaintiffs are not operating for compensation. There are several flaws with this argument. First and foremost, it ignores that the CAC Plaintiffs are compensated for their work: they receive grants from HHS to perform their duties as Federal Counselors.

Second, the argument focuses exclusively on the first definition. The second clause specifies that the definition of State Navigator includes "any person selected to perform the activities and duties identified in 42 U.S.C. 18031(i) in this state . . . ." 42 U.S.C. § 18031(i) is the ACA provision that defines, describes, and empowers Federal Navigators. Thus, by specifying that Federal Navigators are State Navigators, HIMIA

6

defeats any argument that Federal Navigators generally – or the CAC Plaintiffs specifically – can avoid HIMIA by claiming they are not being compensated. And, lest there be any doubt, the ensuing clause defines a State Navigator as "any person who receives funds from [HHS] to perform any of the activities and duties identified in 42 U.S.C. 18031(i) . . . ." Certainly, the grants bestowed by HHS constitute "funds."

The rest of the first sentence cements the conclusion that Defendant's view of HIMIA's scope is too narrow. The final clause broadly includes within the definition of State Navigator "any other person certified by [HHS], or a health benefit exchange operating in this state, to perform such defined or related duties irrespective of whether such person is identified as a navigator, certified application counselor . . . or other title." This provision includes *any* Federal Counselor, regardless of whether any grants, compensation, or funds are provided.[1]

Defendant's second argument relies on section 376.2004(4)'s final sentence. This sentence provides that State Navigator does not include "any not-for-profit entity disseminating to a general audience public health information." Defendant contends – without explanation – that this sentence means the CAC Plaintiffs are not State Navigators. However, the CAC Plaintiffs are not disseminating "public health information," but rather information about QHPs and options available under the FFE. Moreover, it is not clear what a "general audience" is, but to the extent the CAC Plaintiffs must provide counseling, advice and information on an individualized level, it appears likely this requirement is not met. Thus, section 376.2004(4)'s final sentence does not exclude the CAC Plaintiffs from the definition.[2]

---

[1] HIMIA's repeated references to federal statutes further establishes an intent to "plug into" the ACA and describe Federal Counselors, regardless of how they are characterized and regardless of how adequately described by the first sentence's initial definition.

[2] While not clearly stated, Defendant may be contending that if a not-for-profit entity *ever* disseminates public health information to a general audience, that entity is automatically excluded even if they otherwise meet the definition of a State Navigator. If this is Defendant's argument, the Court would reject it because the more logical and natural interpretation of the final sentence is that a not-for-profit entity is excluded so long as *all* it does is disseminate public health information to a general audience. The sentence does not suggest that an entity that qualifies as a State Navigator is excluded

7

The Court concludes HIMIA includes the CAC Plaintiffs as State Navigators for the following independent reasons: (1) they receive compensation in connection with a health benefit exchange, (2) they have been selected to perform the duties of Federal Navigators, (3) they receive grants from HHS to perform the duties of Federal Navigators, (4) they have been certified by HHS to perform duties related to the exchange, and (5) their function is not limited to disseminating public health information to a general audience.

On the other hand, the Court agrees with Defendant's argument insofar as it suggests HIMIA does not apply to the remaining Plaintiffs. Nothing suggests that any of the other Plaintiffs are Federal Counselors. The Complaint's description of these Plaintiffs also does not suggest they are receiving any compensation for doing anything in connection with the FFE. The other Plaintiffs suggest HIMIA applies to them because it requires licensing of anyone who performs the services of a State Navigator – even by those who are not State Navigators. However, reading all of HIMIA's provisions together suggests that only those who are State Navigators under state law must be licensed – and there is no indication that any plaintiffs other than the CAC Plaintiffs qualify as State Navigators.

Although Plaintiffs written arguments do not explain how HIMIA applies to or otherwise affects them, the Court has reviewed Exhibits 3 through 8. These materials also fail to demonstrate HIMIA applies to or affects the other Plaintiffs.

- Some of the other Plaintiffs (notably, Consumers Council of Missouri, Missouri Jobs with Justice, Doctors Letizia and Fogarty, and Ms. Oxford) provide information about eligibility, enrollment, or program specifications of QHPs, the ACA, or the FFE, but none of them claim to do so "for compensation."
- In addition to the preceding observation, HIMIA's licensing requirement does not apply to Plaintiffs Dr. Wayne Letizia and Dr. William Fogarty because they are health care providers. Mo. Rev. Stat. § 376.2002.4(3).[3]

---

simply because it also, at other times, happens to disseminate public health information to a general audience.

[3] Dr. Letizia or Dr. Fogarty would lose this exception if they are certified as Federal Navigators – but in that case, this Preliminary Injunction would protect them.

- Plaintiff Chris Worth does not profess to disseminate information, but rather expresses a desire to obtain information from a "healthcare attorney." Licensed attorneys are not required to be licensed as State Navigators, Mo. Rev. Stat. § 376.2002.4(2), so HIMIA does not impair Worth's ability to get information about his ACA options.

In the absence of further explanation (which is absent from Plaintiffs' filings)[4] the Court has no basis for believing the other Plaintiffs are likely to demonstrate HIMIA imposes any restrictions or requirements upon them. The Court therefore concludes the other Plaintiffs have not demonstrated they are likely to succeed on the merits.[5]

### (b) Licensing Requirements

HIMIA precludes any State Navigator from performing any duties whatsoever unless they have been licensed by the state, Mo. Rev. Stat. § 376.2002.1, or unless the licensing requirement is obviated by section 376.2002.2. HIMIA imposes requirements for obtaining a license. Id. § 376.2004. HIMIA also imposes continuing education requirements for State Navigators. Id. § 376.2006. The CAC Plaintiffs have already complied with federal regulations governing their ability to serve as Federal Counselors, but in order to perform the functions approved and required by HHS they must also comply with HIMIA's additional requirements. Without delving further, it seems obvious these additional requirements obstruct the federal government's operation of the FFE and for that reason alone HIMIA is preempted insofar as it applies to the CAC Plaintiffs.

Defendant offers no real argument against this reasoning – beyond contending HIMIA does not apply to the CAC Plaintiffs, which as noted is not the case. Defendant also contends it is possible to comply with both federal law and state law. Of course, it

---

[4]This absence does not justify holding a hearing or permitting oral argument. It is not that Plaintiffs' argument is unclear or requires proof: the problem is that Plaintiffs have presented no argument. Oral argument cannot be used to present arguments that are not presented in a party's written submissions.

[5]This conclusion would not change if the Court considered the First Amendment or Due Process arguments. Those arguments, like the preemption/Supremacy Clause argument, rest on first concluding HIMIA affects the Plaintiffs in some manner.

9

is theoretically possible for the CAC Plaintiffs to obtain a State Navigator license – but this contention actually proves the violation. The question at hand is not whether it is possible for Federal Counselors to meet HIMIA's licensing requirements; the question is whether the requirement that Federal Counselors comply with additional state regulations imposes additional burdens that frustrates the federal purpose. The Court concludes HIMIA's requirement that federally approved/licensed individuals and entities must also comply with additional licensing requirements constitutes an impermissible obstacle. Cf. California v. Federal Energy Regulatory Comm'n, 495 U.S. 490 (1990) (state requirements for minimum stream flow preempted by federal law permitting Federal Energy Regulatory Commission to license hydroelectric plant because state requirement obstructs federal agency's licensing authority); Ray v. Atlantic Richfield Co., 425 U.S. 151 (1978) (Secretary of Transportation's authority to establish vessel size and speed limitations for tug boats preempts state law setting such standards); Heart of America Grain Inspection Serv., Inc. v. Missouri Dep't of Agriculture, 123 F.3d 1090 (8th Cir. 1997) (state could not set rules for weighing grain in federally licensed grain warehouses).

### *(c) HIMIA's Limitations on State Navigators*

HIMIA's licensing and additional requirements are arguably the least serious obstacles to the ACA's Congressional objectives. Far more significant are HIMIA's limitations on what State Navigators may do.

Section 376.2002.2 describes functions that all State Navigators may perform. However, section 376.2002.3 sets forth functions a State Navigator may not perform unless they are also licensed as an "insurance producer" under state law. An "insurance producer" is, essentially, an insurance agent or an insurance company. Mo. Rev. Stat. §§ 375.012(6), 376.014. Thus, there are certain functions HIMIA precludes Federal Counselors from performing unless they are also licensed as insurance agents. The problem is that federal law requires Federal Counselors to perform some of those functions precluded by HIMIA.

10

For instance, section 376.2002.3(3) precludes State Navigators who are not licensed as insurance agents from providing "advice concerning the benefits, terms and features of a particular health plan or offer advice about which exchange health plan is better or worse for a particular individual or employer." However, Federal Navigators are required to "distribute fair and impartial information concerning enrollment in" health plans and about "the availability of premium tax credits . . . ." 42 U.S.C. § 18031(i)(3)(B). CACs have a similar requirement. 45 C.F.R. § 155.225(c)(1). Federal Navigators are also required to "[f]acilitate selection of a QHP." 45 C.F.R. § 155.210(e)(3). Defendant denies the existence of a conflict, arguing that CACs and Federal Navigators can provide "information" and "facilitate" without providing "advice." On the surface, the distinction – assuming it exists – is impossible to define. The difficulty is augmented when one considers the nature of the "information" Federal Counselors must provide. Providing information about various plans – which necessarily requires providing information about the differing strengths, weaknesses, and other contrasting features – is indistinguishable from "advice."

Section 376.2002.3(5) precludes State Navigators who are not insurance agents from "[p]rovidi[ing] any information or services related to health benefit plans or other products not offered in the exchange." However, Federal Navigators are required to provide information about options, including those that are not in the exchange. 45 C.F.R. § 155.210(e)(2). The two requirements obviously conflict.

In addition to the licensing and other requirements, HIMIA dictates that State Navigators advise persons with private insurance to "consult with a licensed insurance producer regarding coverage in the private market." Mo. Rev. Stat. § 376.2008. Plaintiffs first characterize this requirement as a limitation on their ability to function, but the Court is not convinced. Section 376.2008 seems to only require that State Navigators refer people who have private insurance to talk to the provider to obtain information about that coverage; by itself, the provision does not preclude anyone from doing anything. Plaintiffs then contend this requirement is inconsistent with the ACA,

11

but again the Court is not convinced.[6] Nonetheless, the Court is of the view that any attempt by Missouri to regulate the conduct of those working on behalf of the FFE is preempted. The ACA provides states an opportunity to create exchanges; it also provides an avenue for states and HHS to jointly operate an exchange. Missouri has opted not to be in the health insurance exchange business. Having made the choice to leave the operation of the exchange to the federal government, Missouri cannot choose to impose additional requirements or limitations on the exchange. Doing so frustrates Congress' purpose of having HHS operate FFEs in states where no exchange exists. Thus, section 376.2008 is preempted to the extent it attempts to regulate the conduct of Federal Counselors.

Defendant argues there is no problem with these provisions because the CAC Plaintiffs can simply become licensed as insurance agents. Presenting the argument demonstrates its flaw: the suggestion that those designated to operate the FFE can do so only if they are *also* licensed as insurance agents demonstrates that the state law obstructs the federal purpose. The ACA requires HHS to contract with not-for-profit entities, and further precludes Federal Navigators from receiving compensation from insurance companies. 42 U.S.C. § 18031(i)(4)(ii). Thus, HHS cannot utilize insurance agents to operate the FFE. This means HHS must find willing not-for-profit entities that are already licensed as insurance agents but who are not actually receiving compensation from an insurance company (an unlikely proposition at best) *or* HHS must find willing not-for-profit entities that are willing and able to become certified as insurance agents under Missouri law. Clearly, requiring Federal Counselors to be licensed insurance agents is a significant roadblock to the ACA.

In conclusion, the Court holds the CAC Plaintiffs are likely to succeed on their claim that HIMIA is preempted insofar as it applies to entities and individuals certified under federal law to provide services or perform functions pursuant to the ACA and its attendant regulations, including specifically federally approved/certified CACs, Navigators, and Counselor Designated Organizations. The Court is not persuaded the

---

[6]Plaintiffs also invoke the First Amendment, contending the statute violates their rights by forcing speech. The Court's resolution of the preemption issues makes it unnecessary to consider Plaintiffs' likelihood of success on this theory.

remaining Plaintiffs are likely to succeed on any of their claims because they are not likely to successfully demonstrate HIMIA applies to or affects any of them.

### *(d) HIMIA's Breadth*

Plaintiffs contend HIMIA conflicts with the ACA by allowing individuals to be State Navigators who could not qualify as Federal Counselors. For instance, the ACA provides that one cannot be a Federal Navigator if one "receive[s] any consideration directly or indirectly from any health insurance issuer in connection with the enrollment of any qualified individuals or employees of a qualified employer in a qualified health plan." 42 U.S.C. § 18031(i)(4)(ii); see also 45 C.F.R. § 155.210(d). HIMIA includes no such prohibition on State Navigators; to the contrary (and as discussed above) a State Navigator is limited in what it can do unless it is also licensed as an insurance producer. Defendant counters that the general standards for Federal Navigators set forth in 42 U.S.C. § 1803(i)(2) do not preclude insurance agents or companies from being Federal Navigators – but Defendant never addresses the statutory provision Plaintiffs cite.

Regardless, the Court discerns no reason to delve further into this issue[7] because even if Plaintiffs are correct in their reasoning they are not entitled to prevail because HIMIA's "expansive" definition of State Navigators has no effect upon them. One may regard this as an issue of standing; one may also regard this as an issue related to irreparable harm (the next issue to be addressed in this Order). Regardless, Plaintiffs have not demonstrated why they are entitled to a preliminary injunction

---

[7]If the argument's merits needed to be examined, the Court would require Plaintiffs to explain why the requirements to be a State Navigator must track the definition for a Federal Navigator – particularly in light of the Court's holding that the State is precluded from establishing standards for a Federal Navigator. In other words, so long as the State is precluded from setting requirements for or regulating conduct of Federal Navigators, what difference does it make who Missouri allows to be a State Navigator? Plaintiffs state, in a conclusory manner, that allowing this "undermines" their work, Plaintiffs' Suggestions at 9, but provide no further explanation. Nothing in the ACA has been identified to the Court as prohibiting non-Federal Counselors from talking about the ACA or available options, nor is there any suggestion that State Navigators are permitted to falsely suggest they are designated or certified by HHS.

13

precluding Defendant from allowing those who meet the definition of State Navigator to be certified as such.

## 2. Irreparable Harm

The Court concludes the CAC Plaintiffs have demonstrated they face irreparable harm because they must overcome HIMIA's hurdles in order to operate. They also face irreparable harm because even if they comply with HIMIA's licensing requirements they risk violating HIMIA simply by performing their federally-mandated functions. The Court's prior discussion points out these risks. Augmenting these risks are HIMIA's enforcement provisions. See Mo. Rev. Stat. § 376.2010. First, Defendant may fine any State Navigator who violates HIMIA. Defendant may also suspend the license of State Navigators that violates HIMIA – thereby precluding them from performing their functions in connection with the FFE (because, as stated, HIMIA requires Federal Counselors to be licensed as State Navigators). Setting aside the question as to whether this is an independent violation of the Supremacy Clause (as it bestows state officials the power to stop the federal government's agents and those approved by the federal government from performing their functions), the CAC Plaintiffs face a genuine risk of harm if they, for instance, provide information that contrasts various health coverage options because doing so may constitute "advice" in violation of HIMIA – and if they do not present this information they have violated their obligations as Federal Counselors. Second, Defendant is *also* empowered to fine or suspend State Navigators "for good cause." Defendant argues this phrase is subject to limiting principles but does not suggest what those limitations might be. Setting aside the potential Due Process implications of such a roving commission to punish, the Court readily discerns a threat of irreparable harm.

Alternatively, the CAC Plaintiffs could adhere to HIMIA's restrictions and risk losing their grants. Defendant argues the fact that the CAC Plaintiffs have obtained licenses as State Navigators proves there is no threat – but this (1) does not mean that requiring them (or other Federal Counselors) to do so is permissible under the Supremacy Clause and (2) does not demonstrate the CAC Plaintiffs (or other Federal

14

Counselors) can actually perform their federally-required functions without violating HIMIA's restrictions. The Court holds the CAC Plaintiffs have established they face irreparable harm.

### 3. Balance of Hardships

The Court discerns no hardship to Defendant if he is precluded from enforcing HIMIA as to those who are authorized under federal law. Defendant's arguments to the contrary really relate to the fourth factor and will be discussed in that context.

### 4. Public Interest

As noted, the CAC Plaintiffs and other Federal Counselors must overcome obstacles that cannot withstand constitutional scrutiny in order to perform their federally-required obligations. In addition, the Federal Counselors are faced with (1) a genuine risk of punishment if they perform those federally-required obligations and (2) a loss of their status as Federal Counselors if they do not. All of this serves to undermine the public interest, given the myriad of deadlines for Missouri citizens to comply with the ACA.

Defendant echoes the concern that Missouri citizens must be able to comply with the ACA, but contends HIMIA is necessary to "ensure[ ] that the people assisting are qualified to do so" and expresses fear that an injunction "would potentially allow unqualified individuals and nefarious scam artists to go undetected . . . ." Defendant's Suggestions at 26. However, federally-approved Navigators, CACs and Counselor Designated Organizations *are* qualified in that they have satisfied the requirements of federal law. Defendant does not explain why HHS' approval is insufficient to meet the public interest, or why HIMIA is necessary to accomplish the public interest. On the other hand, the public interest is damaged if the state is permitted to thwart federally-approved Navigators, CACs and Counselor Designated Organizations from performing their functions (either by making it difficult for them to function or by creating compliance dilemmas that prevent them from performing their functions). The Court concludes the

public interest is not harmed by granting the injunction, and that the public interest is actually promoted by granting the injunction, removing the state-created specter of punishment and regulation that likely violates the Constitution, and permitting the FFE to operate as intended by the ACA.

### C. Motion to Dismiss

Defendant filed a Motion to Dismiss, contending Plaintiffs failed to state a claim for which relief could be granted. The motion incorporates Defendant's arguments against the preliminary injunction. The motion (Doc. # 28) is denied because (1) the Court rejects most of Defendant's arguments and (2) none of Defendant's arguments demonstrate Plaintiffs have failed to state a claim for which relief can be granted. At best, Defendant's arguments relate to the merits – but a merits-based argument does not justify dismissal under Rule 12(b)(6).

### III. CONCLUSION

The Court concludes Plaintiffs are likely to prevail on their claim that HIMIA is preempted to the extent that HIMIA applies to federally-approved Navigators, CACs and Counselor Designated Organizations. Accordingly, Defendant is preliminarily enjoined from enforcing HIMIA as to those entities. The Court discerns no justification for requiring Plaintiffs to post a bond. The Motion to Dismiss is denied.

IT IS SO ORDERED.

DATE: January 23, 2014

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT