IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| ST. LOUIS EFFORT FOR AIDS, ) | |
| et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 13-4246-CV-C-ODS |
| ) | |
| JOHN HUFF, Director of the ) | |
| Missouri Department of Insurance, ) | |
| Financial Institutions and ) | |
| Professional Registration, ) | |
| ) | |
| Defendant. ) | |

## ORDER AND OPINION DENYING MOTION TO INTERVENE

Pending is a Motion to Intervene filed by the Missouri Association of Insurance Agents ("MAIA"). MAIA invokes a right to intervene under Rule 24(a) and, alternatively, asks for permission to intervene pursuant to Rule 24(b). In summary, the Court concludes the issues MAIA wishes to litigate (1) are not issues in this case or (2) are issues for which intervention is not justified. As detailed more fully below, the motion (Doc. # 38) is denied.

## I. BACKGROUND

Plaintiffs are Counselor Designated Organizations, Certified Application Counselors, and Navigators designated by the Department of Health and Human Services ("HHS"). They perform functions in connection with the Federally Facilitated Exchange created pursuant to the Affordable Care Act ("ACA"). MAIA is a not for profit corporation whose members are independent insurance agents.

Plaintiffs filed suit to enjoin certain provisions of Missouri's Health Insurance Marketplace Innovation Act of 2013 ("HIMIA"). They argue HIMIA imposes hurdles or otherwise regulates those properly designated by HHS, so it is preempted by the ACA, its attendant regulations, and the Supremacy Clause. The Defendant is John Huff, in

his capacity as Director of the state agency charged with administering and enforcing HIMIA.  As he is sued in his official capacity, Huff is represented by the Missouri Attorney General.

Ascertaining MAIA's or its members' (collectively MAIA) interest in this suit is difficult: MAIA presents a variety of concerns and interests in passing and still others in greater detail, but it is not clear which one(s) MAIA relies on to support its claimed right to intervene.  Among the concerns and interests mentioned are:

- An interest in making sure that those who promote insurance are properly trained and licensed.  Intervenor's Suggestions at 5.
- An interest in preventing Plaintiffs from "interpose[ing] themselves in existing business and professional relationships between independent agents and insureds" by discussing matters related to insurance without adequate knowledge, thereby presenting a risk that MAIA's members will lose business.  Intervernor's Suggestions at 6.
- An interest in keeping Plaintiffs from "perform[ing] activities similar to those" of insurance companies and agents without being licensed and regulated by the State.  Intervenor's Suggestions at 6.
- An "interest in the interplay of the [ACA] and the HIMIA," including a concern that issues presented by Plaintiffs might affect insurance agents.  Intervenor's Suggestions at 5-6.
- A concern that Plaintiffs seek a declaration regarding the ACA that "would limit the ability of independent insurance agents from participating fully in the enrollment of insurance consumer clients in policies placed through the" Federal Exchange.  Intervenor's Suggestions at 5-6.

II.  DISCUSSION

A.  Intervention as of Right

As relevant to this case, Rule 24(a)(2) bestows a right to intervene on any party who "claims an interest related to . . . the subject of the action and is so situated that

disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." In addition to meeting these requirements, a would-be intervenor must demonstrate that it has standing under Article III of the Constitution. E.g., United States v. Metropolitan St. Louis Sewer Dist., 569 F.3d 829, 833-34 (8th Cir. 2009).[1]

### 1. Standing

An association can have standing in one of two ways. The first is when the association suffers an injury to itself – for instance, if the association owns property that is damaged (or, more colloquially, when the association as an entity suffers injury to its own interests). This is not what MAIA asserts.

Instead, MAIA invokes the second viable theory for an association's standing: it claims to be asserting the interests of its members. This theory of standing does not require the association to have suffered an injury to itself, but instead requires MAIA to establish (1) one or more of its members have standing in their own right, (2) the interests it seeks to protect relate to the association's purpose, and (3) neither the claim asserted nor the relief sought require participation by individual members. Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 342-43 (1977). The second and third requirements are not at issue, but the Court holds MAIA has not established that any of its members would have standing in their own right.

Standing is one of several doctrines that reflect and enforce the fundamental limitations on the judiciary's role by insuring that the party has a sufficient stake in the outcome to warrant his, her, or its participation in the suit. Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009). The constitutionally-mandated requirements for standing can be summarized as follows: MAIA must demonstrate that one or more of its members (1) will suffer an injury in fact that is (2) fairly traceable to the challenged

---

[1]Rule 24 also requires that the request to intervene be made in a timely manner. The Court acknowledges Plaintiffs' argument that MAIA did not act in a timely manner by filing its Motion to Intervene after the Court ruled on the Motion for Preliminary Injunction. In light of the Court's ruling, there is no need to address the timeliness issue and that issue is specifically reserved.

3

action and (3) that can likely be redressed by the relief requested.  Moreover, the injury complained of must possess two characteristics: it must be concrete and particularized and it must be actual or imminent.  E.g., Curry v. Regents of Univ. of Minn., 167 F.3d 420, 422 (8th Cir. 1999).  The requirement of imminence insures that the injury is not too speculative and is impending.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 564 n.2 (1992).

MAIA asks the Court to assume the existence of a member who has the requisite injury.  In response to this specific issue, MAIA argues this case is "about how the ACA interfaces with" the State's regulatory framework, and that invalidating HIMIA will have an economic impact on its members.  Reply Suggestions at 2.  MAIA then posits the public harm that might occur if "untrained" Navigators are allowed to talk to consumers.  Reply Suggestions at 3.  However, MAIA's concern about the public interest is not concrete or particularized to MAIA, and is a prototypical example of a generalized grievance that does not support standing.  E.g., Lujan, 504 U.S at 575-76; see also Hein v. Freedom from Religion Foundation, Inc., 551 U.S. 587, 601 n.2 (2007).  Even MAIA's interest in the regulation of the insurance industry is a mere "professional interest" that is insufficient to bestow standing.  Diamond v. Charles, 476 U.S. 54, 66-67 (1986) (rejecting physician's interest in litigating "standards of medical practice" as basis for intervening to defend abortion restrictions).[2]

MAIA's interest in how the ACA and HIMIA operate might give rise to standing *if* the suit would resolve how those statutes apply to MAIA's members.  This point bears emphasizing (and it will be repeated later): *no claims in this suit seek an Order requiring or prohibiting any conduct by MAIA or its members.*

Finally, MAIA offers no substantiation for its theory that any of its members will suffer economic harm.  It offers no evidence, affidavits, or documents.  Its invitation that

---

[2]MAIA finds support in Diamond's suggestion that "a physician who demonstrates that abortion funding regulations have a direct financial impact on his practice may assert the constitutional rights of other individuals who are unable to assert those rights themselves."  476 U.S. at 65-66.  However, HIMIA is not a funding regulation, and MAIA is not attempting to assert a constitutional right *against* state action.

4

the Court simply assume the existence of a member with standing is insufficient. This same invitation was made to the Supreme Court, and it was rejected:

> The dissent proposes a hitherto unheard-of test for organizational standing: whether, accepting the organization's self-description of the activities of its members, there is a statistical probability that some of those members are threatened with a concrete injury. Since, for example, the Sierra Club asserts in its pleadings that it has more than "700,000 members nationwide, including thousands of members in California" who "use and enjoy the Sequoia National Forest," post, at 1154 (opinion of BRYER, J.), it is probable (according to the dissent) that some (unidentified) members have planned to visit some (unidentified) small parcels affected by the Forest Service's procedures and will suffer (unidentified) concrete harm as a result. This novel approach to the law of organizational standing would make a mockery of our prior cases, which have required plaintiff-organizations to make specific allegations establishing that at least one identified member had suffered or would suffer harm.

Summers, 555 U.S. at 497-98. The Court went on to note that it had previously declined to find standing when the organization failed to submit affidavits or otherwise identify a member who would suffer concrete and particularized harm. Id. at 498-99 (citing Lujan, 504 U.S. at 563 and FW/PBS, Inc. v. Dallas, 493 U.S. 215, 235 (1990)).[3]

The preceding discussion addresses only the first requirement of standing: the absence of an injury. The other two requirements are absent as well. Traceability requires a causal connection between the challenged action and the injury; the injury cannot be caused by independent action of a party not before the court. E.g., Bennett v. Spear, 520 U.S. 154, 168 (1997). In this case, the economic injuries MAIA seeks to prevent[4] by intervening are caused by the ACA and the potential competition it provides. Those injuries are not prevented simply by upholding HIMIA.

---

[3]Summers identified one exception to this requirement: "where *all* members of the organization are affected by the challenged activity." 555 U.S. at 498-99 (emphasis in original). However, MAIA has not suggested that all of its members are going to suffer economic harm, and even that proposition would require some substantiation.

[4]Henceforth, the Court will focus on MAIA's allegations of economic injury, as the other claimed injuries are either (1) not implicated in this case (e.g., the claim that the Court might issue a ruling that prohibits MAIA's members from engaging in certain

5

Finally, the financial interest MAIA posits will not be redressed by a favorable ruling. This component requires that the requested relief – upholding HIMIA – presents "a likelihood" of preventing the injury. See Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 103 (1998). The Court understands MAIA's point to be that the Navigators may encourage people interested in low-cost insurance to obtain insurance on the federal exchange created by the ACA. HIMIA will not prevent this from happening: it would only impose certification and other regulatory requirements before Navigators advise consumers of their options under the ACA. This suit does not ask the Court to invalidate the ACA. In fact, it is entirely possible for consumers to obtain insurance from the Federal Exchange without even talking to a Navigator – in which case, HIMIA will do nothing to prevent the economic/competitive injury MAIA has identified. The loss of business could also occur even if HIMIA's constitutionality is upheld because Plaintiffs could then comply with HIMIA. There is no likelihood that a favorable ruling will prevent the harm MAIA seeks to prevent, and thus the redressability component of standing is not established.

To have standing, MAIA must identify one or more of its members who have standing to intervene. MAIA has failed to identify any member who will suffer an injury sufficient to satisfy the injury-in-fact requirement. Even if it had, the Court concludes such an injury would not be traceable to HIMIA's existence or redressable in this proceeding. The Court concludes MAIA lacks standing.

### *2. Rule 24(a)(2)'s Requirements*

Even if MAIA has standing, it has not satisfied Rule 24(a)(2)'s requirements. To a degree, the Court's analysis on this point is similar to the standing analysis above.

Examining the five purported interests set forth in Section I of this Order, the Court finds none of them are sufficient to satisfy Rule 24. The third and fifth interests do not really exist because the case will not call upon the Court to decide anything relating to what MAIA or its members can or cannot do. The Court is deciding what *Plaintiffs*

---

conduct) or (2) are clearly not the type that will support standing because they are generalized concerns shared by all citizens and are not concrete and particularized.

can do under the ACA – and the extent to which the State can impose additional conditions or restrictions on Plaintiffs' actions under the ACA.  The first and fourth interests are generalized interests of all citizens and are clearly interests that the Defendant – a state official sued in his official capacity and represented by the Missouri Attorney General – can adequately protect.  There is a strong presumption that the government will adequately protect public interests, e.g., Little Rock School Dist. v. North Little Rock School Dist., 378 F.3d 774, 780 (8th Cir. 2004); Curry, 167 F.3d at 423, and MAIA has not attempted to suggest Defendant cannot or will not adequately protect these public interests.

      This leaves, then, MAIA's second proffered interest: an interest in preventing Plaintiffs from discussing insurance because it might have an effect on some of its members' businesses.  Here again, MAIA runs afoul of the presumption that Defendant/Missouri can adequately defend HIMIA.  MAIA seeks to avoid the presumption in this context by arguing that it has an interest Defendant/Missouri will not protect; namely, a financial interest that is not shared by the Citizens of Missouri as a whole.  Suggestions in Support at 2, 8.  MAIA argues that any party who has an injury has a right to intervene, but this view would eviscerate the doctrine of *parens patriae*, which creates the presumption that the State is an adequate defender of its own laws.  The authority MAIA cites does not go this far.  In Mille Lacs Band of Chippewa Inidians v. State of Minn., 989 F.2d 994 (8th Cir. 1993), an Indian tribe and its members sought declaratory and injunctive relief in connection with their exercise of hunting, fishing and gathering rights under a treaty.  The tribe and its members alleged various state natural resource laws and regulations interfered with those rights.  The suit sought to affirm the tribe's treaty rights on specified parcels of land, which included private land.  Appearing as would-be intervenors were (1) nine counties where the land in question was located and (2) the private landowners.  The Eighth Circuit held these parties had a right to intervene because they sought to protect a "more narrow and 'parochial' financial interest" than that shared by the public at large.  989 F.2d at 1000-01.  The interest arose because the plaintiffs sought the right to enter on private land, to engage in activity that would affect the value of the specified land, and to engage in activity that would interfere with the owners'/counties' designation for the land.  Id. at 997.  However,

these interests were deemed to not be "subsumed" within Minnesota's interest in enforcing its own statutes. Of some concern was the fact that Minnesota might reach an agreement with the tribes – similar to the Treaty underlying the case – that would not adequately account for the counties' and landowners' interests. Id. at 1001. Such a concern is not present in this case. MAIA advances generalized concerns that federal Navigators will advise citizens of their options under the ACA and that this might possibly affect its members' business. This is not the direct and immediate interest described in Mille Lac.

Following Mille Lac, the Eighth Circuit has made clear that simply having a heightened or particularized interest in the outcome of a suit is insufficient to overcome the strong presumption that the State will represent the interests of all of its citizens. The underlying reason or motivation for defending HIMIA is not important, so long as both Defendant's and MAIA's objective are the same. This is the critical point: Defendant's and MAIA's objectives and litigation position are the same, and the fact that they may have different underlying motivations for supporting HIMIA is not relevant to determining the adequacy of Defendant's defense of HIMIA. MAIA's interest in defending the statute is coextensive with the State's, and there is no basis for deeming the State's defense inadequate just because MAIA asserts an economic motivation Defendant does not. E.g., Little Rock School Dist., 378 F.3d at 780 (intervenor must demonstrate "its interests are distinct and cannot be subsumed within the public interest represented by the government entity"); Curry, 167 F.3d at 422-23 (no right to intervene where governmental defendant allegedly "merely interested in upholding current fee system" while would-be intervenors claimed potential loss of funding should the government be unsuccessful in defending the suit.). Unlike Mille Lac there has been no suggestion that Missouri is likely to compromise. There has also been no suggestion that Missouri's defense is lacking in "enthusiasm" as in Mausolf v. Babbitt, 85 F.3d 1295, 1303-04 (8th Cir. 1996), or that Missouri has to protect conflicting interests as in South Dakota v. Ubbelohde, 330 F.3d 1014, 1025 (8th Cir. 2003), cert . denied, 541 U.S. 987 (2004). MAIA does not have a unique defense available to it that the State cannot assert. Unlike many of the cases MAIA cites (including Mille Lac) it has no "right" being protected by HIMIA that will be implicated should HIMIA be found invalid. MAIA does

not (and probably cannot) argue that its economic concerns alter the Supremacy Clause/preemption analysis that is called for. In short, MAIA has no interest in this suit that is not adequately protected by Defendant/Missouri in its *parens patriae* role.

MAIA wants to intervene to defend the statute. To the extent that it is motivated to do so out of some concern for Missouri citizens, its interest is identical to Missouri's. Even if it is motivated to do so for economic reasons, its objective – defending HIMIA – remains identical to Missouri's and thus is entirely subsumed within Missouri's defense of its own statute. Thus, MAIA has failed to overcome the presumption that its interest in defending HIMIA is adequately addressed by Missouri's defense.

### B. Permissive Intervention

MAIA alternatively asks for permission to intervene pursuant to Rule 24(b). This request is denied.

Rule 24(b)(1)(B) allows a court discretion to permit intervention to anyone who "has a claim or defense that shares with the main action a common question of law or fact." The only defense MAIA arguably has is that HIMIA is constitutional – the exact same defense Defendant already has. The aforementioned presumption that the State can adequately defend its own statutes works in this context as well. Moreover, if MAIA "has" this defense, then so too does every citizen who wants the statute upheld – which is precisely why intervention is not permitted to defend a statute when the State is in a position to do so. MAIA's presence will do one of two things: merely repeat everything Defendant says (in which case there is nothing to be gained by its presence) or attempt to sidetrack matters (as it has, for instance, by raising the specter that this suit will somehow construe the ACA's applicability to its members' business). The Court discerns no reason to muddy the waters.

## III. CONCLUSION

The Motion to Intervene is denied.

IT IS SO ORDERED.

                                      /s/ Ortrie D. Smith
                                      ORTRIE D. SMITH, SENIOR JUDGE
DATE: April 24, 2014               UNITED STATES DISTRICT COURT