IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| ST. LOUIS EFFORT FOR AIDS, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Case No. 13-4246-CV-C-ODS ) |
| JOHN HUFF, Director of the Missouri Department of Insurance, Financial Institutions and Professional Registration, | ) ) ) ) ) ) |
| Defendant. | ) |

### ORDER AND OPINION GRANTING
### PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Pending is Plaintiffs' Motion for Summary Judgment. Doc. #60. Therein, Plaintiffs request this Court declare sections 376.2002.3(3), 376.2002.3(5), and 376.2008[1] of Missouri's Health Insurance Marketplace Innovation Act ("HIMIA") to be preempted by the Patient Protection and Affordable Care Act ("ACA"). Plaintiffs also ask this Court to permanently enjoin Defendant from implementing the previously listed sections of the HIMIA.

### I. BACKGROUND

"In 2010, Congress enacted the Patient Protection and Affordable Care Act, 124 Stat. 199. The Act aims to increase the number of Americans covered by health insurance and decrease the cost of health care." *National Federation of Independent Business v. Sebelius*, 132 S. Ct. 2566, 2580 (2012); *see also* 42 U.S.C. § 18091. Individuals who cannot obtain qualified health plans ("QHPs") from their employer, including "part-time employees, self-employed individuals, and unemployed individuals are steered to the insurance exchanges established under the ACA, where the

---

[1] In their Complaint, Plaintiffs also requested relief with respect to sections 376.2002.1, 376.2000.2(4), 376.2004.1(6), and 376.2010.1 of the HIMIA. However, Plaintiffs neither briefed nor moved for relief on these statutes in their present Motion for Summary Judgment. Accordingly, the Court dismisses these claims from the Plaintiffs' Complaint.

government offers subsidies to those who cannot shoulder the full cost of insurance on their own." *Korte v. Sebelius*, 735 F.3d 654, 728 (7th Cir. 2013). As part of providing QHPs, the exchanges provide the opportunity for individuals and employers to compare various health plans.

The ACA provides a mechanism for states to establish these exchanges, *e.g.*, 42 U.S.C. § 18031(b), but in those states that chose not to do so, the Secretary of Health and Human Services ("HHS") is responsible for establishing and operating the exchange. *E.g.*, 42 U.S.C. § 18041(c)(1); 78 Fed. Reg. 42824. The federal exchange is often referred to as a "Federally Facilitated Exchange" or "FFE." HHS must contract with appropriate not-for-profit entities in the state to operate the FFE. 42 U.S.C. § 18041(c)(1).

All exchanges – whether they are FFEs or created by the state – share certain requirements. Included in those requirements is the creation of a Certified Application Assistance Program consisting of some combination of (1) Certified Applications Counselors ("CACs") and (2) Federal Navigators. These "individuals…assist consumers in purchasing health insurance from state and federal health care exchanges." *St. Louis Effort for AIDS v. Huff*, 782 F.3d 1016, 1019 (8th Cir. 2015). The duties of CACs and Federal Navigators are spelled out in the ACA and are further refined in HHS regulations. Those regulations also regulate the conduct of CACs and Navigators. "Because the primary goal of both Federal Navigators and CACs is to facilitate enrollment in exchanges, they conduct many of the same activities…Still, Federal Navigators have a more extensive set of duties than CACs, and only Federal Navigators receive federal monetary grants." *St. Louis Effort for AIDS*, 1016 F.3d at 1020.

The State of Missouri opted not to create an exchange, so HHS created and operates the FFE in Missouri. Missouri subsequently passed the HIMIA, which regulates the conduct of State Navigators. State Navigators perform duties on behalf of the FFE, and both Federal Navigators and CACs qualify as State Navigators under the HIMIA.

## II. LEGAL STANDARD

### A. Summary Judgment Standard

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See generally Williams v. City of St. Louis*, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588-89 (1986); *Tyler v. Harper*, 744 F.2d 653, 655 (8th Cir. 1984), *cert. denied*, 470 U.S. 1057 (1985). However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the . . . pleadings, but . . . by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### B. Permanent Injunction Standard

In determining whether to issue a permanent injunction, the Court considers four factors: (1) the moving party's actual success on the merits, (2) the threat of irreparable harm to the moving party, (3) the balance of hardships to the parties; and (4) the impact of the injunction on the public interest. *Oglala Sioux Tribe v. C & W Enterprises, Inc.*, 542 F.3d 224, 229 (8th Cir. 2008) (citing *Planned Parenthood v. Rounds*, 530 F.3d 724 (8th Cir. 2008); *Dataphase Systems, Inc. v. C.L. Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981)). "Success on the merits has been referred to as the most important of the four factors." *Roudachevski v. All-American Care Centers, Inc.*, 648 F.3d 701, 706 (8th Cir. 2011).

C. Preemption Standard

"The Supremacy Clause provides that federal law 'shall be the supreme Law of the Land'…[t]hus state law that conflicts with federal law has no effect." *Jones v. Vilsack*, 272 F.3d 1030, 1033 (8th Cir. 2001). "Whether a particular federal statute preempts state law depends upon congressional purpose." *In re Aurora Dairy Corp. Organic Milk Mktg. & Sales Practices Litig.*, 621 F.3d 781, 791 (8th Cir. 2010). "State law is preempted when Congress expressly prohibits state regulation, when Congress implicitly leaves no room for state involve by pervasively occupying a field of regulation, and when state law directly conflicts with federal law." *Chapman v. Lab One*, 390 F.3d 620, 624 (8th Cir. 2004). "Federal regulations also may preempt state law, if the agency intends its regulations to have preemptive effect, and the agency is acting within the scope of its delegated authority." *Id.* When a statute "contains an express preemption clause, [the Court] focus[es]…on the plain language of the statute, because it necessarily contains thebest evidence of Congress' pre-emptive intent." *Id.* at 625 (internal quotations and citations omitted).

Here, section 18041(d) of the ACA provides, "[n]othing in this title shall be construed to preempt any State law that does not prevent the application of the provisions of this title." The Eighth Circuit determined that "[t]his preemption clause is a narrow one, and only those state laws that 'hinder or impede' the implementation of the ACA run afoul of the Supremacy Clause." *St. Louis Effort for AIDS*, 782 F.3d at 1022.

III. DISCUSSION

A. Success on the Merits

1. Application to Plaintiffs

At the preliminary injunction stage of this case, Defendant argued that the HIMIA was not applicable to any of the plaintiffs. The Court agreed with Defendant to the extent it argued the HIMIA was not applicable to plaintiffs Consumers Council of Missouri, Missouri Jobs with Justice, Jeanette Mott Oxford, Dr. Wayne Letizia, Dr. William Fogarty, and Chris Worth; but disagreed with Defendant to the extent it argued HIMIA was not applicable to plaintiffs St. Louis Effort for AIDS and Planned Parenthood

4

of the St. Louis Region and Southwest Missouri. Defendant has presented no further evidence or argument on the issue, and because the Court has been offered no reason to find otherwise, the Court adopts its prior findings in the Preliminary Injunction Order that the HIMIA is applicable to plaintiffs St. Louis Effort for AIDS and Planned Parenthood of the St. Louis Region and Southwest Missouri and is not applicable to the remaining plaintiffs. Moreover, plaintiffs St. Louis Effort for AIDS and Planned Parenthood of the St. Louis Region and Southwest Missouri are both CACs and Federal Navigators. Doc. #60-1, ¶¶ 16, 17, 25, 26.

2. 376.2002.3(3) – "No Advice" Provision

Section 376.2002.3(3) of the HIMIA provides that "a [state] navigator shall not…provide advice concerning the benefits, terms and features of a particular health plan or offer advice about which exchange health plan is better or worse for a particular individual or employer." However, Federal Navigators and CACs must provide information to consumers about health plans including "clarifying the distinctions among health coverage options." 45 C.F.R. §§ 155.225(c)(1), 155.210(e)(2); *see also* 45 C.F.R. §§ 155.225(d)(8)(iii), 155.210(c)(1)(iii)(C).

Defendant argued in its appeal to the Eighth Circuit that the term "advice" in subsection 376.2002.3(3) meant "recommendation regarding a decision or course of conduct," and that the subsection prohibited State Navigators from saying things such as, "I recommend" and "This is the plan you should get." *St. Louis Effort for AIDS*, 782 F.3d at 1025. The Eighth Circuit observed, however, that the subsection immediately following the No Advice subsection – subsection 376.2002.3(4) – prohibits State Navigators from "recommend[ing] or endors[ing] a particular health plan." *Id.* (citing § 376.2002.3(4)). The Eighth Circuit determined that if subsection 376.2002.3(3) also prevented recommendations, as Defendant argued, then subsection 376.2002.3(4) would be superfluous. *Id.* Thus, the Eighth Circuit found that subsection 376.2002.3(3) "cannot be read to prohibit only the giving of a recommendation." *Id.* Instead, the Eighth Circuit ruled that "advice" in section 376.2002.3(3) meant "information or notice given." *Id.*

5

Here, Defendant argues, seemingly in contravention of the Eighth Circuit's ruling, that subsection 376.2002.3(3) is directed at something narrower than providing information. To bolster its argument, Defendant observes that another section of the HIMIA permits State Navigators to "[p]rovide fair and impartial information and services in connection with eligibility, enrollment, and program specifications of any health benefit exchange operating in this state, including information about the costs of coverage, advance payments of premium tax credits, and cost-sharing reductions;" and thus, subsection 376.2002.3(3) must be directed at prohibiting something narrower than providing information. Mo. Rev. Stat. § 376.2002.2(1). In further support of its argument, Defendant contends sections 376.2002.3(3) and 376.2002.3(4) are not identical provisions with only the terms "advice" and "recommend" interchanged; the provisions are directed at different things.

While sections 376.2002.3(3) and 376.2002.3(4) may not be identical provisions with only the terms "advice" and "recommend" interchanged, Defendant previously argued in its appeal to the Eighth Circuit that the practical effect of section 376.2002.3(3) was the same as that of section 376.2002.3(4). In particular, Defendant argued that section 376.2002.3(3) would prohibit State Navigators from stating, "'I recommend' or 'this is the plan you should get,' or 'these are the features you should get.'" *St. Louis Effort for AIDS*, 782 F.3d at 1025.

Furthermore, Defendant never affirmatively explains what the "something narrower" is that section 376.2002.3(3) prohibits. The closest Defendant comes to defining the "something narrower," as best the Court can discern, is that one can give advice without recommending a particular plan, and the "advice" subsection 376.2002.3(3) prohibits is advice which recommends a particular plan. Thus, under Defendant's line of reasoning, subsection 376.2002.3(3) prohibits advice recommending a plan and subsection 376.2002.3(4) prohibits recommending a plan. The Court discerns no difference whatsoever between "recommending" and "advice which recommends." The meaning and impact of those words is the same. Because subsections 376.2002.3(3) and 376.2002.3(4) cannot both prohibit "recommending," the Court finds, like the Eighth Circuit, that "advice" in section 376.2002.3(3) means "information."

6

Accordingly, section 376.2002.3(3)'s prohibition against providing information to consumers about "the benefits, terms and features of a particular health plan or….about which exchange health plan is better or worse…" impedes Federal Navigators' and CACs' ability to fulfill their duty to inform consumers about health plans including "clarifying the distinctions among health coverage options."  45 C.F.R. §§ 155.225(c)(1), 155.210(e)(2); *see also* 45 C.F.R. §§ 155.225(d)(8)(iii), 155.210(c)(1)(iii)(C).

### 3.  376.2002.3(5) – "Off-Exchange" Provision

Section 376.2002.3(5) of the HIMIA provides that "a [state] navigator shall not provide any information or services related to health benefits plans or other products not offered in the exchange."  However, when assisting consumers, Federal Navigators must "acknowledge other health plans" and must tell consumers "about the full range of QHP options and insurance affordability programs for which they are eligible."  *Id*. at §§ 155.210(e)(2), 155.215(a)(1)(D)(iii).  Additionally, Federal Navigators and CACs must provide information to consumers, including "clarifying the distinctions among health coverage options, *including* QHPs."  45 C.F.R. §§ 155.210(e)(2), 155.225(c)(1) (emphasis added).

Defendants argue the Court should narrowly construe section 376.2002.3(5) as only prohibiting State Navigators from providing information about which they have not been trained.  As an example, Defendant states the section should prohibit a State Navigator from providing substantive information about off exchange plans, but it does not prevent State Navigators from answering questions such as, "My current off exchange plan has this feature; how does that compare to a plan offered on the exchange?"

The Court is unpersuaded.  The plain language of section 376.2002.3(5) prohibits State Navigators from providing *any* information about off exchange plans. Defendant is essentially asking this Court to insert limitations into section 376.2002.3(5) that simply do not exist.  Further, the Eighth Circuit noted that the clause "clarifying the distinctions among health coverage options, *including* QHPs," "suggests CAC's [and Federal Navigators] must inform clients of the differences between a number of health care plans; including – but not limited to – those offered through the exchange."  *St.*

7

*Louis Effort for AIDS*, 782 F.3d at 1026. Thus, section 376.2002.3(5)'s prohibition against providing information about off exchange health plans impedes Federal Navigators and CACs' ability to carry out their federally mandated duties to "inform[] consumers about the full range of health care available to them and 'clarify[] the distinctions among health coverage options.'" *Id.*; 45 C.F.R. §§ 155.210(e)(2), 155.225(c)(1).

4. 376.2008 – "Referral" Provision

Section 376.2008 of the HIMIA provides that "[u]pon contact with a person who acknowledges having existing health insurance coverage obtained through an insurance producer, a [state] navigator shall advise the person to consult with a licensed insurance producer regarding coverage in the private market." However, Federal Navigators and CACs have a duty to provide fair, accurate, and impartial information, and CACs have an additional duty "to act in the best interest of the applicants assisted." 45 C.F.R. §§ 155.210(e)(2); 155.225(c)(1); 155.225(d)(4).

The Eighth Circuit observed that, "[u]nder Missouri law the term 'insurance producer' includes both insurance brokers and agents. Insurance agents in Missouri generally represent the interests of insurance companies, not the insured, and thus owe no duty to the insured. Insurance brokers do owe fiduciary duties to the insured, but these duties are limited and do not require brokers to provide complete and impartial information." *St. Louis Effort for AIDS*, 782 F.3d at 1026-27 (internal citations omitted). Defendant argues that while section 376.2008 requires State Navigators to advise consumers to consult with entities that do not have to provide fair and impartial information, the section does not prevent State Navigators, themselves, from being fair and impartial. The Court finds that this is a distinction without a difference. If Federal Navigators and CACs send consumers to a source of information – i.e., insurance producers – who are not required to be fair and impartial, Federal Navigators and CACs are also not being fair and impartial.

Additionally, 45 C.F.R. § 155.225(d)(8)(i) declares as preempted "requirements that [CACs] refer consumers to other entities not required to provide fair, accurate, and impartial information." Defendant claims that "refer" and "advise someone to consult

8

with" do not mean the same thing. To wit, Defendant suggests that "refer" means to send someone away to receive services. For example, Defendant argues "a physician who is a general practitioner may refer a patient with heart disease to a cardiac specialist for treatment." The Court is not persuaded. First, the Court finds that the definition of refer is not limited to sending someone away to receive services, and Defendant's own example illustrates this point. Just because a general practitioner recommends a patient see a specialist does not mean the patient will actually do so. Second, there is no meaningful difference between "refer" and "advise someone to consult with," and in fact, "advise someone to consult with" seems to perfectly define "refer." Accordingly, the Court finds that section 376.2008 of the HIMIA impedes Federal Navigators' and CACs' duty to provide fair, accurate, and impartial information, and CACs' duty "to act in the best interest of the applicants assisted." 45 C.F.R. §§ 155.210(e)(2); 155.225(c)(1); 155.225(d)(4).

B. Remaining *Dataphase* Factors

The Court now turns to the remaining *Dataphase* factors. The Court finds no grounds to depart from the reasoning in its January 23, 2014 Preliminary Injunction Order regarding the balance of hardships and public interest. Accordingly, the Court incorporates its previous rulings on those factors into this Order.

Finally, the Court finds that Plaintiffs will suffer irreparable harm without an injunction. As discussed in this Order, if Plaintiffs comply with the HIMIA, then they violate their obligations as Federal Navigators and CACs. The reverse is true as well: if Plaintiffs perform their federally-mandated functions, they risk violating the HIMIA. Augmenting this risk is HIMIA's enforcement provisions. *See* Mo. Rev. Stat. § 376.2010. Defendant may fine State Navigators who violate the HIMIA and may suspend the license of State Navigators who violate the HIMIA.

IV. CONCLUSION

In sum, the Court declares sections 376.2002.3(3), 376.2002.3(5), and 376.2008 of the HIMIA are preempted by the ACA as it relates to Federal Navigators and CACs. Further, the Court finds that all four *Dataphase* factors are satisfied in this case, and

thus, permanently enjoins Defendant from enforcing the previously listed sections of the HIMIA against Federal Navigators and CACs.  Because Plaintiffs' preemption arguments provide sufficient grounds for the Court to grant summary judgment in Plaintiffs' favor, the Court need not address the remainder of Plaintiffs' arguments in support of their Motion for Summary Judgment.

IT IS SO ORDERED.

DATE: March 16, 2016

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT

10

Case 2:13-cv-04246-ODS   Document 65   Filed 03/16/16   Page 10 of 10